IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE RENNINGER : | |
|     Plaintiff : | |
| : | CIVIL ACTION NO: |
| v. : | |
| : | |
| UNITED PARCEL SERVICE, INC., : | |
| GLENN SIMMONS AND JOHN ALLEN : | |
|     Defendants | |

**COMPLAINT**

**JURY TRIAL DEMANDED**

**INTRODUCTION:**

1. This action is brought by Christine Renninger to redress her deprivation of rights under the Age Discrimination in Employment Act (ADEA) at Count I and under Americans with Disabilities Act (ADA/ADAAA) at Count II, and under Title VII of the Civil Rights Act of 1964 as amended at Count III and under Pennsylvania Human Relations Act (PHRA) at Count IV.

The older disabled female plaintiff worked for Defendant United Parcel Service, Inc. ("UPS") as a shuttle driver then promoted to a supervisor in 2013. The individually named defendants are upper management that aided and abetted in discrimination towards the plaintiff. The UPS Defendants subjected the female plaintiff to disparate treatment and a hostile work environment. The UPS Defendants denied Plaintiff reasonable accommodations. The UPS Defendants retaliated against the Plaintiff for engaging in protected activity. Plaintiff was told to "leave or retire". After thirty-one years of employment, Plaintiff was wrongfully discharged and replaced by younger males, not disabled.

In support of these claims, Christine Renninger alleges:

1

**JURISDICTION AND VENUE**:

2. Original jurisdiction founded on the existence of questions arising under particular statutes. The action arises under the Age Discrimination in Employment Act (ADEA) and under the Americans with Disabilities Act (ADA/ADAAA) and Title VII of the Civil Rights Act of 1964 as amended.

3. Jurisdiction founded upon principals of pendent jurisdiction under 28 U.S.C section 1367 that authorizes the court to supplemental jurisdiction over any claims against parties that are part of the same controversy as the claim that provides the basis for the court's original jurisdiction.

4. At all times relevant, Defendants have continuously done business in Dauphin County, Commonwealth of Pennsylvania, and have continuously had at least 15 employees.

5. The matter in controversy exceeds, exclusive of interests and costs, the sum of one hundred thousand dollars.

6. The unlawful practices and harm complained of occurred in Dauphin County in the Commonwealth of Pennsylvania where defendant employer conducts business and Plaintiff performed services on behalf of the defendant. Venue therefore lies in the Middle District of Pennsylvania.

7. Plaintiff complied with all the conditions precedent to the filing of this complaint. The Equal Employment Opportunity Commission (EEOC) issued the Plaintiff her Notice of Rights dated August 12, 2021. Plaintiff timely filed her complaint within the required 90 days. Plaintiffs exhausted her administrative remedies.

**PARTIES:**

8. Plaintiff Christine Renninger is a citizen of Lancaster County in the Commonwealth of Pennsylvania. She worked for Defendant UPS for thirty-one years. She was hired in 1989 as a shuttle driver and in 2013 promoted to a supervisor at the UPS Harrisburg Airport location in Middletown, Pennsylvania.

9. Defendant UPS is in the business of global shipping and logistic services. The corporate headquarters is in Atlanta, Georgia. Plaintiff worked for Defendant UPS at the Harrisburg Airport location in Middletown, Pennsylvania.

10. Defendant Glenn Simmons is a manager for UPS at the Harrisburg Airport location in Middletown, Pennsylvania where Plaintiff worked. Defendant Simmons was Plaintiff's direct supervisor. Defendant Simmons reported to Defendant John Allen. At all times relevant, Defendant Simmons acted individually and acted on behalf of Defendant UPS. Defendant Simmons was a decision maker who aided and abetted discrimination towards Plaintiff Renninger.

11. Defendant John Allen is a manager for UPS at the Harrisburg Airport location in Middletown, Pennsylvania where Plaintiff worked. Defendant Allen supervised Glenn Simmons, who was Plaintiff's direct supervisor and otherwise, Plaintiff reported to Glenn Simmons and Defendant John Allen. At all times relevant, Defendant Allen acted individually and acted on behalf of Defendant UPS. Defendant Allen was a decision maker who aided and abetted discrimination towards Plaintiff Renninger.

12. At all times relevant, Defendant UPS acted by and through management, staff, directors, supervisors, employees and all other agents acting for and on behalf of UPS.

**CLAIMS:**

13. Plaintiff is an older female born in 1960.

14. In 1989, Defendants UPS hired Plaintiff as a sorter and within a year promoted her to shuttle driver.

15. In 2013, Defendants UPS promoted Plaintiff to a supervisor.

16. Plaintiff worked at the UPS Harrisburg Airport location in Middletown, Pennsylvania.

17. Plaintiff's last position was Manager/Gateway Supervisor on the AM Shift. She was the Ramp/Gateway Outside Supervisor on the AM Shift.

18. Plaintiff is qualified for the position titled Manager/Gateway Supervisor and likewise qualified for comparable supervisory positions. Plaintiff's experience, stellar performance reviews, longevity of 31 years, seniority, temperament and work history demonstrate her exemplary qualifications. See "Strong Performance" Exhibit A.

19. Plaintiff's direct supervisor is Defendant Glenn Simmons.

20. Defendant Glenn Simmons reports to Defendant John Allen

21. Defendant John Allen is responsible for the operations at the UPS Harrisburg Airport location where Plaintiff worked.

22. Plaintiff is disabled and otherwise the UPS Defendants regard her as disabled. Her disability is "acute stress disorder" with related disabling physical conditions

23. Plaintiff's disability affects her daily life activities under the ADA/ADAAA.

24. At all times relevant, Plaintiff is able to perform the essential

functions of her job with accommodation restricting her exposure to a particular younger male co-worker who she reported for physical and sexual harassment.  Otherwise, Plaintiff is able to perform the essential functions of her without accommodation as long as she does not have exposure to the harassing male co-worker, James LaSalla.

25. The UPS Defendants were on notice and aware of the plaintiff's disability.

26. The UPS Defendants subjected Plaintiff to a hostile work environment.

27. Since 2017, Plaintiff had to supervise and work with a younger male James LaSalla who physically assaulted her and mentally abused her.

   a. He was defiant and made sexist comments that were rude, degrading, violent and offensive such as "You can either drink or go home and beat your wife".   He referred to the plaintiff as a "monkey".

   b. The comments likewise offended Plaintiff's subordinates that created a hostile work environment.

28. From on or about December 2017, Plaintiff repeatedly and continuously reported James LaSalla's abusive conduct to the defendant managers, Glenn Simmons and John Allen. December 2017, in a fit of rage, James LaSalla threw a package at the Plaintiff who was then his direct supervisor.

29. Plaintiff repeatedly requested remedial action that she not work and have no contact with James LaSalla and that he be removed from her shift and supervision.

30. The UPS Defendants failed to take effective remedial action.  No corrective action was taken with James LaSalla and his vindictive conduct and harassment continued tolerated by UPS Defendants.

31.     On or about 2018, the UPS Defendants promoted James LaSalla to an inside supervisory position on the PM Shift.

32.     Sometime thereafter, the UPS Defendants reassigned James LaSalla to the AM Shift as an Inside Supervisor working the same shift alongside the plaintiff who worked outside on the ramp.

33.     The 2020 COVID Pandemic greatly increased the volume of packages and therefore greatly increased the flights and planes arriving and departing at the Harrisburg Airport location where Plaintiff worked.  The UPS Defendants moved James LaSalla outside to work with the Plaintiff.

34.     Working with James LaSalla on the AM Shift caused the plaintiff great emotional distress, panic attacks, nervous anxiety, insomnia and stomach upset.  Plaintiff reported the disabling symptomatic distress to the UPS Defendant Managers.

35.     The intolerable abusive work conditions interfered with the plaintiff's ability to perform her job.  Plaintiff took sick leave from work and vacation time from work.  Plaintiff sought medical care and treatment.

36.     Plaintiff's direct supervisory managers, Defendants Simmons and Allen, failed to take corrective action and tolerated the harassment and hostility that James LaSalla directed at the plaintiff.  Beginning on or about April, 2020, Plaintiff contacted human resources to report retaliation, harassment, disparate treatment, that her job duties were removed, and the hostility she was subjected to at the Middletown location.

    a.     Plaintiff contacted Jollene Myercheck, believed to be the human resources manager for the MidAtlantic Region where Plaintiff worked.  **Plaintiff**

6

**specifically reported that the individually named managers "want me to retire".** See attached Exhibit B.

b.      Plaintiff contacted JD Dickerson, believed to local human resources. Plaintiff reported "complaints how I am treated opposed to other co-workers on my shift". See attached Exhibit C.

c.      August 19, 2020 and continuing thereafter, Plaintiff contacted Corporate Human Resources, John Coliton the Global Director of HR Compliance and Employee Relations. Plaintiff pleaded for intervention and remedial action, fearful to return to unsafe hostile work conditions. See attached Exhibit D.

37.    UPS Human Resources failed to take effective remedial action and Plaintiff was fearful for her health and safety returning to the harassment and hostility on the AM shift with James LaSalla.

38.    Plaintiff was on scheduled vacation September 27, 2020 through October 3, 2020.

39.    On Friday, October 2, 2020, Plaintiff went into the office and again pleaded with Manager Defendant Glenn Simmons to rectify the harassment and remove or reassign Plaintiff from working with James LaSalla.

40.    Defendant Simmons' response was that the plaintiff could "leave or retire".

41.    That Sunday, October 4, 2020, Defendant Operations Manager John Allen texted the plaintiff and authorized the plaintiff to work the PM Shifts APART from James LaSalla.

42.    Plaintiff worked the PM Shifts on October 5, 2020 and October 6, 2020.

43. Plaintiff went into work the PM Shift on October 7, 2020, at which time the UPS Defendant Managers informed the plaintiff that she could no longer work the PM Shift **and insisted** that the she return to work on the AM Shift with James LaSalla.

44. After leaving the office on October 7, 2020, Plaintiff contacted and made a harassment complaint to Cornerstone, the <u>recently contracted</u> corporate third party human resources for Defendant UPS. Allison Williams returned the contact to Plaintiff and directed the plaintiff to apply for disability: "need to go out on disability is fine", See Exhibit E.

45. October 6, 2020, was the last day that Plaintiff worked at UPS.

46. December 18, 2020, Plaintiff's medical provider returned her to work with restrictions not to work in a toxic environment, meaning work separate and apart from James LaSalla. See medical release at Exhibit F.

47. The UPS Defendant Managers Simmons and Allen have not contacted the plaintiff since they refused her accommodated PM Shift work and demanded that Plaintiff return to hostile work conditions on the AM Shift with James LaSalla. They have not offered her comparable positions when she was released to return to work as of December 18, 2020. The UPS Defendant Managers failed to engage in the interactive process and failed to take corrective/remedial action.

48. The UPS Defendants wrongfully denied the plaintiff comparable PM Shift work and instead hired a significantly younger male, J. Reyes-Valentin.

49. It is believed and therefore averred, that James LaSalla assumed Plaintiff's outside ramp position and replaced her on the AM Shift.

50. The UPS Defendants replaced the plaintiff with younger males.

51. On December 4, 2020, Plaintiff submitted Charges of Discrimination to the Equal Employment Opportunity Commission, dual filed with the Pennsylvania Human Relations Commission. A copy of the Charge is attached at Exhibit G.

52. On December 23, 2020, Plaintiff delivered notice to UPS Defendants that she filled a discrimination charge with the EEOC along with a copy of her medical release to return to work with restrictions. See attached correspondence at Exhibit H.

53. The UPS Defendants refuse to provide Plaintiff work within her restrictions and purportedly maintain her on unpaid leave status. The UPS Defendants denied the plaintiff reasonable accommodations and they failed to engage in the good faith interactive process under the ADA/ADAAA. Her application for UPS disability benefits was denied although Defendant UPS codes her time card as "disability". The UPS Defendants regard the plaintiff as disabled.

54. The UPS Defendants told Plaintiff to "leave or retire". Plaintiff was wrongfully discharged. Her separation from employment qualified for unemployment compensation benefits, finding her separation was "necessary and compelling reason for leaving the job." A copy of the Unemployment Compensation Determination is attached at Exhibit I.

55. The UPS Defendants subjected the plaintiff to an ageist and sexually hostile work environment. The harassment was severe and/or pervasive.

56. The UPS Defendants treated the plaintiff differently, disparately, and adversely on the basis of her sex, age, disability/regarded disability, requesting reasonable accommodation, reporting sexual harassment, reporting age and sex discrimination and for engaging in protected activity.

57. The UPS Defendants retaliated against the plaintiff for requesting reasonable accommodation.

58. The UPS Defendants retaliated against the plaintiff for reporting discrimination and harassment.

59. The UPS Defendants retaliated against the plaintiff for engaging in protected activity.

60. As a result of the UPS Defendants' actions and inactions, the plaintiff suffered harm and losses.

61. Plaintiff timely filed administrative charges of discrimination against the UPS Defendants with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Plaintiff exhausted her administrative remedies.

62. Defendants caused Plaintiff to suffer harm and losses.

## COUNT I

## VIOLATIONS OF THE ADEA

**CHRISTINE RENNINGER V UNITED PARCEL SERVICE, INC.**

63. The allegations of paragraphs 1 thru 62 are incorporated by reference.

64. The conduct by United Parcel Service, Inc. described above constitutes violations of the Age Discrimination in Employment Act (ADEA) as amended.

65. The conduct by Defendant United Parcel Service, Inc. described above was willful within the meaning of the Age Discrimination in Employment Act as amended.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant United Parcel Service, Inc. and the Court:

(A)  Award Plaintiff actual damages for loss of revenue, including back pay, differential pay, future earnings and lost benefits with interest;

(B)  Award Plaintiff compensatory damages for distress, lost career, embarrassment, and humiliation;

(C)  Award Plaintiff liquated damages;

(D)  Award Plaintiff costs of this action and reasonable attorney's fees;

(E)  Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT II

## VIOLATIONS OF THE ADA/ADAAA

**CHRISTINE RENNINGER V UNITED PARCEL SERVICE INC.**

66.  The allegations of paragraphs 1 thru 65 are incorporated by reference.

67.  The conduct by Defendant United Parcel Service, Inc. described above constitutes violations of the Americans with Disabilities Act as amended

68.  The conduct by Defendant United Parcel Service, Inc. described above was willful within the meaning of the Americans with Disabilities Act as amended.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant United Parcel Service, Inc. and the Court:

    (A)    Award Plaintiff actual damages for loss of revenue, including back pay, differential pay, future earnings and lost benefits with interest;

    (B)    Award Plaintiff compensatory damages for distress, lost career, embarrassment, and humiliation;

    (C)    Award Plaintiff punitive damages;

    (D)    Award Plaintiff costs of this action and reasonable attorney's fees;

    (E)    Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT III

## VIOLATIONS OF TITLE VII

**CHRISTINE RENNINGER V UNITED PARCEL SERVICE, INC.**

69.    The allegations of paragraphs 1 thru 68 are incorporated by reference.

70.    The conduct by Defendant United Parcel Service, Inc. described above constitutes violations of Title VII of the Civil Rights Act of 1964 as amended.

71.    The conduct by Defendant United Parcel Service, Inc. described above was willful within the meaning of Title VII of the Civil Rights Act of 1964 as amended.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant United Parcel Service, Inc. and the Court:

    (A)    Award Plaintiff actual damages for loss of revenue, including back pay, differential pay, future earnings and lost benefits with interest;

    (B)    Award Plaintiff compensatory damages for distress, lost career, embarrassment, and humiliation;

    (C)    Award Plaintiff liquidated damages;

    (D)    Award Plaintiff costs of this action and reasonable attorney's fees;

    (E)    Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT IV

## VIOLATIONS OF THE PHRA

## CHRISTINE RENNINGER V UNITED PARCEL SERVICE INC.

## AND GLENN SIMMONS AND JOHN ALLEN

72.    The allegations of paragraphs 1 thru 71 are incorporated by reference.

73.    The conduct by the UPS Defendants described above constitutes violations of the Pennsylvania Human Relations Act.

74.    Individual Defendant Glenn Simmons and individual Defendant John Allen aided and abetted discrimination in violation of the Pennsylvania Human Relations Act.

75.    The conduct by the UPS Defendants described above was willful within the meaning of the Pennsylvania Human Relations Act.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant UPS and Defendant Simmons and Defendant Allen and the Court:

    (A)    Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest;

    (B)    Award Plaintiff compensatory damages for distress, lost career,

embarrassment, and humiliation;

(C)     Award Plaintiff costs of this action and reasonable attorney's fees;

(D)     Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

Respectfully submitted:

*s//Nina B. Shapiro*

Nina B. Shapiro, Esquire

Attorney for Plaintiff
PA #44040
53 North Duke Street, Suite 201
Lancaster, PA 17602
717-399-8720
bgdnbs@aol.com; ninashaplaw@aol.com

DATE:  November 8, 2021